UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBERT HOEPPNER,

      Plaintiff,

v.                                                   Case No. 17-C-1775

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

**DECISION AND ORDER REVERSING COMMISSIONER'S DECISION**

This is an action for judicial review of a decision by the Commissioner of Social Security denying the applications of Plaintiff Robert Hoeppner for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Hoeppner first filed his applications nine years ago in March 2010, alleging disability due to nerve damage in his lower back and right leg with an onset date of January 15, 2009, when he was thirty years old. Following the denial of his applications, both initially and on reconsideration, Hoeppner requested a hearing before an administrative law judge (ALJ). R. 196, 205, 214. An ALJ issued a decision on February 17, 2012, finding that Hoeppner had severe impairments of "right ilioinguinal mononeuropathy; sacral cyst; somatoform disorder with psychological factors and medical condition; depression chronic; learning disorder, N.O.S.; and rule out borderline intellectual functioning," but concluding that Hoeppner was not disabled. R. 178–85.

Hoeppner appealed, and the Social Security Administration (SSA) Appeals Council remanded the case to an ALJ on February 12, 2013. R. 192–93. After a second hearing, an ALJ

issued a decision on September 4, 2014, again concluding that Hoeppner was not disabled. R. 24–38. After Hoeppner sought review of the ALJ's decision in this court, the parties jointly stipulated to remand the case back to the SSA in September 2016. R. 1074–75, 1081–83. The Appeals Council issued an order of remand setting forth the issues that the ALJ must resolve and ordering that a subsequent, duplicative claim for Title XVI benefits that Hoeppner filed be consolidated. R. 1081–83.

On September 6, 2017, the ALJ held a video hearing where Hoeppner, who was represented by counsel, and a VE testified. R. 945, 953–90. In a 22-page decision dated October 16, 2017, the ALJ thoroughly described and analyzed the evidence before him and concluded that Hoeppner was not disabled. R. 914. The ALJ found that Hoeppner met the Social Security Act's insured status requirements through June 30, 2013, and had not engaged in substantial gainful activity since January 15, 2009, the alleged onset date. R. 915–16. The ALJ found that Hoeppner had the following severe impairments: peripheral neuropathy, affective disorder, somatoform disorder, and a learning disorder. R. 916. The ALJ then concluded that Hoeppner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 917.

After consideration of the entire record, the ALJ ultimately determined that Hoeppner had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), "except he must avoid even moderate exposure to unprotected heights, hazards, and use of moving machinery. The claimant is also limited to simple, routine, and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and only occasional interaction with the public and supervisors." R. 919. The ALJ determined that these limitations

2

made Hoeppner unable to perform any past relevant work, but that there were jobs that existed in significant numbers in the national economy that he could perform, such as laminator, assembler, and table worker. R. 932–33. Based on these findings, the ALJ determined that Hoeppner was not under a disability, as defined in the Social Security Act, from January 15, 2009, through the date of the decision. R. 933–34. Hoeppner now seeks judicial review. *See* 42 U.S.C. § 405(g).

Hoeppner does not challenge the ALJ's findings with respect to his physical impairments. Instead, he claims that the ALJ failed to adequately incorporate the moderate limitations in concentration, persistence, or pace (CPP) caused by his mental impairments into the residual functional capacity (RFC) determination and the corresponding hypothetical questions posed to the vocational expert (VE), thereby failing to comply with an Appeals Council remand order. Hoeppner also claims the ALJ erred in the weight assigned to a treating source opinion. For the reasons set forth below, the Commissioner's decision will be reversed and remanded for further proceedings.

**LEGAL STANDARD**

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

After the ALJ's decision was remanded by stipulation, the Appeals Council issued a remand order setting forth the issues the ALJ needed to resolve. *See* R. 1081–83. The remand order stated that the ALJ's decision contained an inadequate evaluation of Hoeppner's mental RFC. More specifically, the order stated that the decision relied on the opinions of State agency psychologists Kyla King and Joan Kojis, but not all of the mental limitations that Drs. King and Kojis assessed were incorporated into the RFC. The Appeals Council further noted that the decision failed to explain the basis of its RFC finding with respect to these mental limitations.

After listing the issues to resolve and explaining the prior decision's defects with respect to Drs. King and Kojis' assessments, the remand order directed that, "[u]pon remand, the Administrative Law Judge will": (1) if necessary, obtain evidence from a medical expert to clarify the nature and severity of Hoeppner's impairments; (2) give further consideration to Hoeppner's RFC and provide rationale with specific references to evidence in support of the assessed limitations, and in so doing, further evaluate and explain the weight given to the treating, nontreating, and

4

nonexamining source opinions; and (3) obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on Hoeppner's occupational base, making sure that the hypothetical questions posed to the VE reflect the specific capacity/limitations established by the record as a whole. R. 1082.

Hoeppner contends that the ALJ failed to comply with the Appeals Council's remand order under 20 C.F.R. §§ 404.977(b) and 416.1477(b) because the ALJ failed to adequately account for Hoeppner's moderate limitations in CPP in the RFC determination and in the hypothetical questions posed to the VE. While Hoeppner also argues that the ALJ did not follow the Appeals Council's guidance with respect to the opinions of Drs. King and Kojis, his argument that the ALJ failed to follow the Appeals Council's guidance is essentially the same argument he makes on the merits: the ALJ failed to properly incorporate Hoeppner's limitations in CPP into the RFC determination and hypothetical questions posed to the VE. It is to that issue that I now turn.

At his step 3 assessment of Hoeppner's mental impairments, the ALJ found that, "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation." R. 918. In his more thorough consideration of the evidence that followed, the ALJ considered the May and September 2010 opinions of State agency psychologists Drs. King and Kojis, as well as the May 2016 opinions of State agency psychologist Ellen Rozenfeld. As to Hoeppner's CPP, the ALJ explained that the State agency psychologists opined that Hoeppner had moderate limitations, "including his ability to understand, remember and carry out detailed instruction; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a

5

consistent pace without an unreasonable number and length of rest periods." R. 929. The ALJ further noted that, "[w]hile Dr. Kojis opined that the claimant had no worse than moderate mental limitations in his ability to meet some basic mental work demands, the overall evidence of record is most consistent with Dr. Rozenfeld's opinion that despite findings of moderate mental limitations, the claimant retains the ability to perform simple repetitive tasks on a sustained basis." *Id.*

Based on all of the evidence, the ALJ then determined Hoeppner's RFC, which is defined as "the most that [a claimant] can still do despite [the claimant's] limitations" caused by physical and mental impairments. 20 C.F.R. § 404.1545(a)(1). From the evidence of his physical impairments, the ALJ found that Hoeppner is able "to perform sedentary work . . . except that he must avoid even moderate exposure to unprotected heights, hazards, and use of moving machinery." R. 919. As a result of his mental impairments, the ALJ concluded that Hoeppner "is also limited to simple, routine, and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and only occasional interaction with the public and supervisors." *Id.* In an apparent effort to comply with the Appeals Council's order of remand, the ALJ then attempted to explain how the RFC he had formulated accommodated the mental impairments he found Hoeppner had. The ALJ explained:

> The limitations to simple, routine and repetitive work obviously address the claimant's moderate limitations in understanding, remembering and applying information; moreover, they would also require less ability to concentrate, persist or maintain pace than would more complex work tasks. Limiting the claimant to no fast-paced work also addresses his moderate limits in concentration, persistence and pace, since fast-paced work logically requires more focus and attention than slower-paced work. Similarly, limiting the claimant to *simple* work-related decisions addresses the claimant's moderate limitations in understanding, remembering and applying information as well as his need to concentrate and persist in work tasks despite moderate limitations in these areas. Limiting the amount of change in the

6

workplace likewise eases the level of concentration and persistence required for successful task completion.

R. 927.

Despite this explanation, Hoeppner argues that the ALJ's RFC does not sufficiently account for his moderate limitations in CPP and, thus, the ALJ's hypothetical questions to the VE are likewise deficient. Hoeppner's argument finds strong support in several Seventh Circuit opinions, including most recently *DeCamp v. Berryhill*, 916 F.3d 671, 2019 WL 923692 (7th Cir. Feb. 26, 2019). The ALJ may have thought that limiting a claimant to "simple, routine, and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and only occasional interaction with the public and supervisors" was sufficient to account for the moderate difficulties in CPP the ALJ found, but the Seventh Circuit has made clear that it is not. As the court explained only last month in *DeCamp*,

> We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace. The ALJ's analysis is similarly flawed with respect to DeCamp's mild limitations in understanding, remembering, and carrying out simple instructions and her moderate limitations in concentration, persistence, and pace as found by Dr. Goldstein. An ALJ need not use specific terminology, but we have repeatedly rejected the notion that a hypothetical ... confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.

*Id.* at *4 (internal citation omitted) (alteration in original).

The ALJ further erred in failing to include in the RFC the additional limitations the State agency consultants noted Hoeppner had with respect to other more specific activities within the CPP domain, including "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday or workweek without

7

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. 929. Having given "great weight" to the State agency consultants who identified these limitations, the ALJ was required to include those limitations as well in both his RFC and the hypothetical he posed to the VE, or explain why he did not. Again, returning to *DeCamp*,

> The ALJ's hypothetical to the vocational expert omitted any mention of DeCamp's moderate limitations in the four areas identified by Dr. Pape (whose opinion the ALJ cited to support her finding): maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination or proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace.

2019 WL 923692, at *4.

To be sure, if a person is unable to maintain the attention and concentration needed to perform even a simple, routine, and repetitive task for a full eight-hour workday, less regular breaks and a meal period, or perform activities within a schedule, or maintain regular attendance and be punctual within normal tolerances, or complete a normal workday or workweek without excessive breaks, he or she can presumably hold no job that exists in the national economy. If that were the case, then one would think that the State agency consultants, who are paid to provide the expert opinions needed to decide a claim, would say so. Instead, under the SSA's procedures, they are asked to provide notations indicating that the claimant is "not significantly limited," "moderately limited," or "markedly limited" in such activities on their summary checklist, without in the same space explaining how that finding translates into the claimant's functional ability to hold a job. R. 158–59, 580–81, 1066–67. It is the failure of the ALJ to include in his RFC (and corresponding

8

hypothetical) the activities in which the expert, on whose opinion the ALJ places great weight, finds the claimant is moderately or even mildly limited that requires reversal.

If I were writing on a clean slate, I would hold otherwise. I would note that the finding of a "moderate limitation" in CPP at steps 2 and 3 of the SSA's sequential evaluation process, as the boilerplate language in every decision and the SSA's own ruling, SSR 96-8p, explicitly states, is not an RFC finding:

> the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment . . . .

R. 919; SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). In other words, the ALJ's findings with respect to the broad "paragraph B" and "paragraph C" criteria at steps two and three are not RFC findings, but are instead the preliminary findings called for by the SSA's "special technique" for evaluating mental impairments that is described in the applicable rulings and regulations. SSR 96-8p; 20 C.F.R. §§ 404.1520a; 416.920a. The "special technique," or "psychiatric review technique," is an initial screening tool that the SSA uses to decide whether a claimant has a severe mental impairment that either meets or equals the severity of one of the listed impairments or, if not, is nevertheless severe and requires further evaluation. 20 C.F.R. § 404.1520a(d). When, using the special technique, the adjudicator finds that the claimant has a severe mental impairment that neither meets nor is equivalent in severity to any listing, a mental residual functional assessment is completed. § 404.1520a(d)(3). As SSR 96-8p explains, "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental

9

disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." 1996 WL 374184, at *4.

I would also note, if I were writing on a clean slate, that neither the State agency consultants' checks in the boxes of the old Mental Residual Functional Assessment (MRFCA) forms (R. 580), nor the written ratings in the newer electronic version of the forms (R. 1066), are intended as RFC findings either. As the SSA's Program Operations Manual System (POMS) explains, "**Section I** [the Summary Conclusions section of the MRFCA] **is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." POMS, DI 24510.060 (July 2, 2018), https://secure.ssa.gov/poms.nsf/lnx/0424510060 (emphasis in original). Instead, as the instructions to the form and the POMS explain, "[t]he **degree and extent** of the capacity or **limitation** must be described in narrative format in Section III." POMS, DI 24510.063 (emphasis in original); R. 580, 1066; *see also Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 637 (3d Cir. 2010) ("Because Smith cannot rely on the worksheet component of the Mental Residual Functional Capacity Assessment to contend that the hypothetical question was deficient, his argument is without merit as it pertains to Dr. Tan and Dr. Graff."). Moreover, the phrase "moderately limited," as used on the worksheet section of the form, means only that "the individual's **capacity to perform** the activity is **impaired**." POMS, DI 24510.063 (emphasis in original). It does not indicate the degree of impairment.

Thus, to understand the State agency consultant's assessment of Hoeppner's mental RFC, one would have to look to the narrative section of the MRFCA. In this case, looking to the MRFCA completed by Dr. Rozenfeld, to whom the ALJ assigned "great weight," one would see that Dr. Rozenfeld concluded that "[o]verall, from a psychological perspective, the [claimant] retains the

ability to perform simple repetitive tasks on a sustained basis in a work setting with occasional contract with others and routine place changes." R. 1067. Dr. Rosenfeld concluded Hoeppner had such a mental RFC notwithstanding her notations on the first part of the form that Hoeppner was "moderately limited" in "the ability to maintain attention and concentration for extended periods of time;" "the ability to work in coordination with or in proximity to others without being distracted by them;" "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;" "the ability to interact appropriately with the general public;" "the ability to accept instructions and respond appropriately to criticism from supervisors;" "the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;" and "the ability to respond appropriately to changes in the work setting." R. 1066–67. Since the RFC determined by the ALJ in this case was even more restrictive than Dr. Rozenfeld's mental RFC assessment, notwithstanding the "moderate limitations" she noted in the worksheet, I would conclude that the ALJ did not err in concluding that Hoeppner was capable of such work.

But I am not writing on a clean slate. I am writing as a district court bound by the precedent of the Court of Appeals for the Circuit in which this district is located. And the Seventh Circuit has at least implicitly rejected each of the reasons provided above for upholding the Commissioner's determination. *See DeCamp*, No. 18-2105, 916 F.3d 671, 2019 WL 923692 (7th Cir. Feb. 26, 2019), *reversing* No. 15-C-1261, 2018 WL 1378758 (E.D. Wis. Mar. 19, 2018); *Radosevich v. Berryhill*, No. 17-3326, 2019 WL 286172 (7th Cir. Jan. 22, 2019), *reversing* No. 16-C-1119, 2017 WL 4119626 (E.D. Wis. Sept. 18, 2017); *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), *reversing* No. 12-C-1102, 2014 WL 1089740 (E.D. Wis. Mar. 19, 2014). It is now abundantly clear that under the

11

law of this circuit, the ALJ must include in the RFC, and in the corresponding hypothetical question to the VE, all of the limitations the ALJ finds in the paragraph B criteria at steps 2 and 3 of the sequential evaluation, as well as those in the "summary conclusions" or "worksheet" section of the MRFCA form. It is also clear that under the law of this circuit, "moderately limited" means more than some impairment. Exactly what more it means is unclear. While the ALJ's attempt to translate such a limitation into job-related restrictions that a VE is likely to understand is understandable, doing so risks likely appeal and almost certain reversal. *See, e.g.*, *Winsted v. Berryhill*, 915 F.3d 466, 471 (7th Cir. 2019) ("Though particular words need not be incanted, we cannot look at the absence of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010))).

Surveying the law of the circuit on these issues in a similar case several years ago, I observed:

> Unless clarification on these issues is obtained, the Commissioner should change the Agency's forms and instructions so that the consultants and ALJs will know that the boxes checked in Section I of the MRFCA are in fact RFC findings, at least in this circuit. Similar changes should be made to the PRT form and the accompanying rules and regulations so as to alert ALJs that contrary to the language of SSR 96–8p quoted above, limitations on "paragraph B" criteria at steps 2 and 3 of the sequential evaluation are in fact RFC findings. Without such changes, and in the absence of clarification, the confusion surrounding the use of these forms will only continue to cause repetitive, costly and time-consuming litigation instead of providing claimants and ALJs the bright line rules needed to allow prompt dispositions of these important cases with some confidence that they will be upheld.

*Pingel v. Colvin*, 156 F. Supp. 3d 947, 959 (E.D. Wis. 2016). The clarity that was missing then has now been provided by the Seventh Circuit. Absent reconsideration by that court or further review in the Supreme Court, the need for the SSA to change its forms and instructions to its adjudicators

12

is obvious. To continue on this path without such changes will continue to result in reversals at a rate that will only increase the delays in and costs of adjudication.

Though the inadequacy of the ALJ's hypothetical questions is sufficient to warrant reversal, the court will briefly address Hoeppner's argument that the ALJ assigned insufficient weight to the treating source statement of Dr. Mary Papandria. A treating source opinion is given controlling weight when the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). When a treating source opinion is not given controlling weight, the opinion is weighed in light of the length, nature, and extent of the treatment relationship, as well as the frequency of examination, specialization of the treating source, whether relevant evidence supports the opinion, whether the opinion is consistent with the record as a whole, and any other factors that tend to support or contradict the medical opinion. § 404.1527(c)(2)–(6).

Hoeppner argues that the ALJ failed to provide a good reason for rejecting Dr. Papandria's opinion and failed to consider the regulatory factors. Dr. Papandria opined that, as of May 2017, Hoeppner met the criteria of listings 12.04 and 12.06. R. 1522–25. Dr. Papandria further opined that Hoeppner would be off task more than thirty percent of the time during a forty-hour workweek, would likely miss five or more work days each month, had a less than fifty percent chance of performing a job on a sustained basis for eight hours per day, five days week, and, based on his mental abilities, would be precluded from work for fifteen or more percent of an eight-hour workday. R. 1526–29. Dr. Papandria also opined that Hoeppner had none to mild limitations in activities of daily living and social functioning, marked difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. R. 1529–30.

The ALJ found that Dr. Papandria's opinion warranted little weight because it is internally inconsistent and unsupported by psychiatric treatment notes in 2017. R. 930. The ALJ explained that Dr. Papandria's findings that Hoeppner met the listing criteria and experienced marked restriction in his ability to concentrate, persist, or maintain pace are inconsistent with findings that Hoeppner had none or mild limitations in activities of daily living and social functioning. R. 930–31. The ALJ further explained that Hoeppner's treatment notes from 2017, around the time Dr. Papandria made her findings, showed that Hoeppner rated his mental health symptoms as three out of ten and had an unremarkable mental status examination, including euthymic affect and neutral mood. R. 931. The ALJ also highlighted April and June 2017 neurological evaluations that revealed that Hoeppner had "intact ability to follow commands and converse appropriately; normal thought process and comprehension; full recent and remote memory; intact attention and concentration; adequate fund of knowledge; and clear and fluent speech." *Id.* Lastly, the ALJ noted that, in May 2017, Hoeppner reported continued stability in mental health symptoms with treatment. *Id.* The ALJ then concluded that "the objective medical evidence does not support the degree of mental limitation assessed by Dr. Papandria." *Id.*

The ALJ provided sufficient rationale in assigning little weight to Dr. Papandria's opinion. While the ALJ could do more to explain how a finding of none to mild limitations in daily-living activities and social functioning contradicts a finding of marked limitations in an ability to concentrate, persist, or maintain pace, the ALJ adequately explained how Dr. Papandria's opinion was inconsistent with other substantial evidence in the record. Pointing to this inconsistency is sufficient in this case. While Hoeppner complains that the ALJ did not conduct a factor-by-factor analysis under the applicable regulations, he does not cite any authority that requires such rigidity,

14

and in any event, the ALJ's analysis is grounded in § 404.1527(c)(3)–(4). While not required, the ALJ may choose to clarify the factors considered and the weight assigned to each given that this action will be remanded for other reasons.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this order. The Clerk is directed to enter judgment accordingly.

Dated this __14th__ day of March, 2019.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
